IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SUE A. MENDOZA,

                              Plaintiff,

        vs.                                        Civil Action No.
                                                   6:06-CV-1233 (DNH/DEP)

MICHAEL J. ASTRUE, Commissioner
of Social Security,[1]

                              Defendant.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

ANTONOWICZ LAW FIRM                     PETER W. ANTONOWICZ, ESQ.
1300 Floyd Avenue
Rome, NY 13440-4600

FOR DEFENDANT:

HON. ANDREW BAXTER
Acting United States Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

        [1]     Plaintiff's complaint, which was filed on October 11, 2006, named Jo
Anne B. Barnhart, the former Commissioner of Social Security, as the defendant.  On
February 12, 2007, Michael J. Astrue took office as Social Security Commissioner.  He
has therefore been substituted as the named defendant in this matter pursuant to Rule
25(d) of the Federal Rules of Civil Procedure, and no further action is required in order
to effectuate this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL        BARBARA L. SPIVAK, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                      SUZANNE M. HAYNES, ESQ.
                                        Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Sue A. Mendoza, who suffers from various diagnosed physical and mental conditions, including degenerative disc disease, osteoarthritis, carpal tunnel syndrome, left hip pain, anxiety, and depression, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of her applications for disability insurance ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act.  In her appeal, plaintiff asserts that the pivotal determination of the administrative law judge ("ALJ") assigned by the agency to hear and determine the matter, to the effect that she was not disabled at the relevant times, is not supported by substantial evidence in light of his failure to regard Mendoza's carpal tunnel syndrome as a severe impairment and to consider its effects upon her ability to perform work related functions.  Plaintiff further maintains

2

that the ALJ's determination regarding her residual functional capacity ("RFC") overlooks contrary opinions of her treating physicians regarding her capabilities, as well as her own statements concerning the limitations which she experiences as a result of her conditions.  Additionally, plaintiff argues that the ALJ's reliance upon the testimony of a vocational expert to conclude that she is capable of performing available work was misplaced since the expert's opinions were predicated upon hypothetical questions which did not take into consideration the full extent of her mental limitations.

Having carefully reviewed the record in light of the plaintiff's arguments, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, I recommend that the defendant's motion for judgment on the pleadings be granted.

I.    BACKGROUND

Plaintiff was born in 1961; at the time of the most recent administrative hearing in this matter, she was forty-four years old.

3

Administrative Transcript at pp. 41, 506, 511.[2]  Plaintiff is separated, has a

daughter, and lives alone in a single family home in Verona, New York.

AT 41-43, 512.  Plaintiff's formal education extended only to completion of

the eleventh grade, although she has since received a general

equivalency diploma ("GED").  AT 60, 484.

Plaintiff's last employment was with United Cerebral Palsy, where

she worked from March of 1994 until November, 2001, when she was

fired.  AT 54-55; 515-17.  In that position, which was full time, plaintiff

assisted the agency's clients with their daily living activities, during the

course of which she was required to stand during much of the day and to

lift between eight and ten pounds frequently and up to fifty pounds on

occasions.  *Id.*  Prior to her employment with United Cerebral Palsy,

Mendoza was employed for approximately twenty-four years in various

positions, including as a food service worker, a cook, and a residence

counselor.  AT 55, 81.

In her initial application for benefits, plaintiff alleged that she was

disabled as a result of various specified physical and mental conditions,

---

[2]      Portions of the administrative transcript, filed by the
Commissioner and consisting of a compilation of evidence and proceedings before the
agency, Dkt. No. 5, will be cited hereinafter as "AT ___."

including arthritis, back pain, asthma, nervousness, and depression.  AT

30, 54.  At the most recent hearing plaintiff refined her disability claim,

attributing her inability to work principally to back pain and panic attacks,

the latter of which have been known to trigger asthma and require

emergency treatment.  AT 518-19.  Plaintiff also testified that she has

been diagnosed with gastroesophageal reflux disease ("GERD"), although

that condition has been well controlled with medication, as well as with

bilateral carpal tunnel syndrome, for which surgery has not yet been

recommended.  AT 519-20.

Plaintiff has received treatment for her physical conditions from

multiple sources.  Dr. Kathleen Garbooshian has treated plaintiff's asthma,

GERD, hip pain, and back condition, dating back to August of 2003.  AT

206-24, 302-13, 402-05, 439-45.  Plaintiff has also been evaluated and

treated for those same various conditions, including knee pain, with

doctors at the Rome Memorial Hospital, Central New York Physiatry, and

Oneida Orthopaedic Associates.  AT 171-205, 227-41, 375-87.  More

recently, including in August of 2004, Dr. Shiv S. Bhatt has treated

plaintiff's carpal tunnel syndrome, described by that care provider as "mild"

in degree.[3]  AT 395-99, 406-07.

Plaintiff's physical conditions have been treated fairly conservatively over time, including with such medications as Bextra, Prilosec, Flovent, Albuterol, Flexeril, and Lortab.  *See* AT 106, 120, 134, 141, 168, 173, 178, 182-83, 87, 206, 208, 212, 218, 220, 227, 230, 305-12, 418, 442, 444-45. Physical therapy has also been recommended, although plaintiff attended such sessions only for a relatively short period.  *See* AT 114-17, 412-14, 447-49.  Surgery for plaintiff's back has not been recommended; plaintiff has, however, received at least one lumbar epidural steroid block to control pain.  *See* AT 182, 225.

In addition to her physical conditions, plaintiff has also sought treatment for mental health issues, both from Dr. Garbooshian, who has addressed plaintiff's complaints of depression at various times, *see e.g.*, AT 206, 210, 312, 402-04, *but see* AT 220 ("Does not appear depressed or anxious."), and with staff at Mental Health Connections from July 2003 until March 2005, where she complained of being overwhelmed and stressed by a combination of circumstances, including her family situation

---

[3]      It should be noted that in a report of EMG and Electrodiagnostic testing conducted in September 1994, Dr. Keri LaVigne noted the lack of definitive evidence of carpal tunnel syndrome.  AT 375-77.

and pain.  AT 247-54, 388-94, 415-38.  Plaintiff has been diagnosed as

suffering from panic disorder, anxiety, and depression, and has been

prescribed such medications as Effexor and Lexapro.  AT 206, 208, 212,

218, 220, 247-54, 306-12, 388-94, 415-38, 442, 444-45.

In addition to the records of her treating sources, the administrative

transcript contains reports of consultative physical and mental

examinations of the plaintiff.  On April 15, 2004 orthopedic and internal

medicine examinations of the plaintiff were undertaken by Dr. Kalyani

Ganesh.  AT 260-63, 265-69.  In reports on both of those examinations,

during which Ms. Mendoza recounted her daily activities, Dr. Ganesh

diagnosed the plaintiff as suffering from degenerative disc disease in the

lower back, lower back pain, arthritis, and asthma, opining that as a result

of those conditions she does not suffer any gross limitations in sitting,

walking, standing, or climbing, and is only mildly limited in her ability to lift,

carry, push, and pull.  AT 262-63, 268.

Plaintiff was also psychologically examined and evaluated on April

15, 2004 by Kristen Barry, Ph.D. to discern any limitations associated with

her mental conditions.  AT 255-59.  In a report of that examination, Dr.

Barry stated that plaintiff smelled of alcohol, her speech was fluent and

clear, her thought processes were coherent and goal-directed, her affect was somewhat apathetic and hopeless, her mood was dysthymic and down, her attention and concentration as well as memory skills were grossly intact, her intellectual functioning was in the low-average range, and her insight and judgment were poor.[4]  AT 257.  Dr. Barry opined that vocationally, plaintiff appears capable of following and understanding simple instructions and directions, but that she has difficulty handling stressors.  AT 258.  After elaborating on her findings, Dr. Barry diagnosed the plaintiff as suffering from alcohol dependence, depressive disorder not otherwise specified ("NOS"), anxiety disorder NOS, and cocaine and cannabis dependence in remission.  *Id.*

On April 30, 2004, Dr. Richard R. Weiss, a non-examining consultant, completed both a psychiatric review technique form and a mental RFC assessment regarding the plaintiff.  AT 282-99.  Responding to questions posed in the psychiatric review technique form, Dr. Weiss reported that plaintiff suffers from a medically determinable impairment

---

[4]     During the examination by Dr. Barry, Ms. Mendoza admitted regularly consuming alcohol, and having had two drinks on the morning of evaluation.  AT 256. Those statements are in stark conflict with plaintiff's  hearing testimony, during which she stated that she last consumed alcohol in April of 2003.  AT 526.

which does not precisely satisfy the diagnostic criteria of anxiety related disorders (listing 12.06) and affective disorders (depressive disorder NOS), and further that she also exhibits behavioral or physical changes associated with substance addiction disorders (listing 12.09).  AT 285, 287, 290.  Proceeding to address the "B" criteria of the governing listings, Dr. Weiss concluded that plaintiff had slight restrictions on activities of daily living and in maintaining social relationships; moderate deficiencies in maintaining concentration, persistence, or pace; and had experienced one or two repeated episodes of deterioration of extended duration.  AT 292.  In his mental RFC assessment, Dr. Weiss examined twenty categories of mental functioning; of those twenty, he found that plaintiff had moderate limitations in seven groupings, but concluded that she was not significantly limited in any others.  AT 296-97.

## II.   PROCEEDINGS BEFORE THE AGENCY

Plaintiff filed applications for DIB and SSI benefits on December 1, 2003, asserting a disability onset date of November 18, 2001.  AT 41-43, 315-17.  Following the denial of those applications, AT 25-30, 318-23, a hearing was conducted, at plaintiff's request, on December 8, 2004 by ALJ Barry Anderson to address plaintiff's claims for benefits.  *See* AT 474-

505.  ALJ Anderson ultimately concluded that plaintiff was not disabled, based upon his survey of the available evidence and plaintiff's hearing testimony. *See* AT 327-36.  That determination, however, was set aside by the Social Security Administration Appeals Council and the matter was remanded for further consideration based upon the Appeals Council's finding that the ALJ's RFC determination was more restrictive than the only RFC assessment in the record and that the ALJ failed to provide that existing opinion with "any weight/rationale" as required under the Regulations.  AT 340-43.  In its decision, the Appeals Council instructed the ALJ to obtain, if appropriate, updated medical records and medical source statements regarding plaintiff's ability to work despite her limitations, as well as to arrange for consultative internal medicine and/or mental status examinations if the additional evidence did not clearly depict plaintiff's limitations.  AT 342.  Additionally, the Appeals Council directed the ALJ to seek clarification of the nature and severity of plaintiff's impairments, if necessary, and to obtain supplemental opinion testimony from a vocational expert based upon a hypothetical incorporating plaintiff's limitations as established by the record.  *Id.*

In accordance with the Appeals Council's remand, a supplemental

hearing was conducted on October 13, 2005 by ALJ Robert Gale to further address plaintiff's claim for benefits.  *See* AT 344-54, 506-41.  ALJ Gale issued a written decision regarding plaintiff's request for DIB and SSI benefits on March 22, 2006.  AT 17-24.  In his decision, after conducting a *de novo* review of the record and applying the now familiar five part sequential test for determining disability, ALJ Gale concluded at step one that plaintiff has not engaged in substantial gainful activity since her alleged disability onset date.  AT 18-23.  At steps two and three of the disability algorythim, the ALJ concluded that plaintiff's degenerative disc disease, depression, anxiety disorder NOS, and polysubstance abuse (ethanol, cocaine, and cannabis) currently in remission represent impairments of sufficient severity to significantly restrict her ability to perform basic work activities, but that they do not meet or equal the attributes of any of the listed, presumptively disabling impairments set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[5] AT 23.

Before proceeding to step four of the sequential analysis, ALJ Gale

---

[5]      In his decision, ALJ Gale rejected plaintiff's claims that her GERD, left hip pain, carpal tunnel syndrome, and asthma constituted severe impairments.  AT 19.

next determined that despite the limitations imposed by her medical conditions, plaintiff retains the RFC to perform a "significant range" of sedentary work, concluding that physically she can 1) lift and carry ten pounds; 2) stand and walk for two hours in an eight-hour workday; 3) sit for six hours in an eight-hour workday; 4) push and pull without repetitive use of her lower extremities; and further that she should 5) never crawl or climb ladders or scaffolds; 6) only occasionally crouch and bend; 7) avoid temperature extremes, high humidity, fumes, gases, odors, and dust; and that despite her mental conditions she can 8) perform work that requires no more than the ability to understand, remember, and carry out simple instructions; 9) make simple work-related decisions; 10) respond appropriately to supervisors and co-workers, and 11) work in a low stress environment that involves only occasional changes in the work setting and interaction with co-workers.[6]  AT 20-21, 23.  In making that determination,

---

[6]     The governing regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).  In addition, a subsequent ruling has clarified

ALJ Gale relied upon medical evidence in the record, including reports generated by treating and evaluating physicians, and rejected plaintiff's subjective testimony, to the extent that it was inconsistent with that finding, as not totally credible.  AT 21, 23.

Applying his RFC finding, ALJ Gale determined that plaintiff is unable to perform her past relevant work, but, in reliance upon the medical-vocational guidelines (the "grid") set forth in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, as a framework for determining the existence of available work which the plaintiff is capable of performing, assisted by testimony from a vocational expert, found that there is available work within the national and local economies which plaintiff is capable of performing including, *inter alia,* as a food checker and surveillance system monitor.  AT 24.  ALJ Gale thus concluded that plaintiff is not disabled and, accordingly, denied her applications for DIB and SSI benefits.  AT 24.  ALJ Gale's opinion became a final determination of the agency on August 21, 2006, when the Appeals

---

that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling ("S.S.R.") 83-10, 1983 WL 31251, *Titles II and XVI: Capability To Do Other Work – The Medical-Vocational Rules of Appendix 2* (S.S.A. 1983).

Council denied her request for review of that decision.  AT 9-12.

A.    This Action

Plaintiff commenced this action on October 11, 2006.  Dkt. No. 1.

Issue was thereafter joined on February 1, 2007 by the Commissioner's

filing of an answer, accompanied by an administrative transcript of the

proceedings and evidence before the agency.  Dkt. Nos. 5, 6.  With the

filing of plaintiff's brief on April 27, 2007, Dkt. No. 9, and that on behalf of

the Commissioner on May 4, 2007, Dkt. No. 10, the matter is now ripe for

determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(1)(B) and Northern

District of New York Local Rule 72.3(d).[7]   *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

---

[7]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Commissioner is limited; that review requires a determination of whether the correct legal standards were applied and whether the decision is supported by substantial evidence.  *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S. Ct. at 217); *Martone*, 70 F. Supp. 2d at 148 (quoting *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148.  In such a case the

16

court may remand the matter to the Commissioner under sentence four of

42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to

develop a full and fair record or to explain his or her reasoning.  *Martone*,

70 F. Supp. 2d at 148 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.

1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be

considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and*

*Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without

remand, while unusual, is appropriate when there is "persuasive proof of

disability" in the record and it would serve no useful purpose to remand

the matter for further proceedings before the agency.  *Parker*, 626 F.2d at

235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644

(2d Cir. 1983).

     B.    Disability Determination - The Five Step Evaluation Process

     The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

18

from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>The Evidence In This Case</u>

        1.    <u>Severity of Physical Impairment</u>

In her challenge to the agency's determination, plaintiff argues the record warrants a finding that in addition to the impairments recited by the ALJ, her carpal tunnel syndrome was sufficiently severe to meet the minimal requirement imposed at step two of the sequential evaluation process. *See* Plaintiff's Brief (Dkt. No. 9) at p. 9.

At that stage of the controlling analysis, the ALJ is required to make a determination as to whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to perform basic work activities. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (citing 20 C.F.R. §§ 404.1520, 416.920). The controlling regulations define the phrase "basic work activities" in terms of "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). For purposes of evaluating the severity of an impairment, relevant basic work activities can include

    (1)    Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;

    (2)    Capacities for seeing, hearing, and speaking;

    (3)    Understanding, carrying out, and remembering simple instructions;
    (4)    Use of judgment;
    (5)    Responding appropriately to supervision, co-workers and usual work situations; and
    (6)    Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b); *see Pickering v. Chater*, 951 F. Supp. 418, 424 (S.D.N.Y. 1996); *see also* Social Security Ruling ("S.S.R.") 85-28, 1985 WL 56856, at *3-4, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985).

    Age, education, and work experience are not evaluated when determining whether an impairment or combination of impairments is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). The severity analysis does no more than "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim transcends the *de minimis* level, then further analysis is warranted. *Id.* Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031 (citations omitted).

    The portion of plaintiff's challenge which relates to her physical

impairment is focused upon the ALJ's finding that her carpal tunnel
syndrome was not sufficiently severe to satisfy the modest requirement of
step two in the disability inquiry.[8]  *See* Plaintiff's Brief (Dkt. No. 9) at p. 9.
In making that determination, the ALJ stated that plaintiff's "past concerns
over bilateral carpal tunnel involved only short-lived and even then
relatively mild symptoms, and do not present the medical picture of
durationally ongoing and actually 'severe' limitation."  AT 19.  The
objective medical evidence in the record supports the ALJ's conclusion.

In September 1994, Dr. Keri LaVigne opined that there was "[n]o
definitive electrodiagnostic evidence of carpal tunnel syndrome bilaterally"
and "no evidence of ulnar neuropathy . . .  bilaterally." AT 375.  In April
2004, Dr. Ganesh reported on two occasions that plaintiff's hand and
finger dexterity was intact, and her grip strength was 5/5 bilaterally.  AT
262, 268.  On July 1 and August 10, 2004, Dr. Garbooshian noted that
plaintiff had left carpal tunnel syndrome and assumed it was also present

_____

[8]     The Commissioner notes in his responsive brief that plaintiff may also be
arguing that her left hip pain was sufficiently severe to qualify as an additional
impairment of step two of the five step disability protocol.  *See* Commissioner's Brief
(Dkt. No. 10) at pp. 9-10.  Having carefully reviewed the record, I concur in the
Commissioner's assertion that the conclusion, implicit in the ALJ's decision, to the
effect that the left hip pain experienced by plaintiff was not sufficiently severe to
warrant such a finding, is supported by substantial evidence.

on the right because plaintiff complained of the same symptoms. AT 307.

The treating physician also reported, however, that plaintiff had negative

Tinel and Phalen tests bilaterally. AT 307-08. On these same occasions,

Dr. Garbooshian also stated that plaintiff had good handgrip strength and

no numbness or tingling was elicited with palpation of the medial or lateral

epicondyles. *Id.*

Dr. Garbooshian has noted in her records that plaintiff was being

primarily treated for her carpal tunnel syndrome by Dr. Bhatt. *See* AT 306,

445. Despite that representation, there is a dearth of information

regarding Dr. Bhatt's treatment and diagnosis of such condition in the

record. The limited information regarding that specialized treatment

reveals that on August 16, 2004, Dr. Bhatt stated that there was

hypesthesia[9] in distribution of the median nerve, and Phalen and Tinel

tests were positive. AT 396. Dr. Bhatt nonetheless found that there was

no obvious intrinsic atrophy or evidence of compression of the ulnar nerve,

radial and ulnar arterial pulses as well as circulation on the hand were

satisfactory, and there was no weakness of plaintiff's grip strength. AT

---

[9]     Hypesthesia, also referred to as hypoesthesia, refers to the distortion of
sense, "consisting of abnormally decreased sensitivity, particularly to touch."
DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 914 (31st ed. 2007).

396-97.  Dr. Bhatt opined that plaintiff was not a candidate for surgery because her carpal tunnel syndrome was "mild."  AT 397.

It is true that despite these relatively normal findings, Dr. Bhatt has opined that plaintiff is "very limited" in her ability to lift, carry, push, pull, and use her hands, and that the condition was expected to extend beyond 180 days.  AT 398, 406-07.  Similarly, in May 2005, Dr. Garbooshian stated that plaintiff was "very limited" in her ability to lift, carry, push, and pull and "moderately limited" in the use of her hands.  AT 404.  The medical findings discussed above, however, provide substantial evidence that these assessments do not coincide with the medical evidence.

To be sure, the threshold showing required in order to establish the requisite level of severity of step two of the sequential analysis is modest, intended to eliminate only conditions with minimal impact on a claimant's ability to perform work related functions.  *See Dixon*, 54 F.3d at 1030; *see also Antonetti v. Barnhart*, 399 F. Supp. 2d 199, 203 (W.D.N.Y. 2005) (noting that the step two severity test "is not a difficult standard to meet and is intended merely to weed out *de minimus* claims").  Nonetheless, in this instance the objective medical evidence does not support the limitations asserted by Drs. Bhatt and Garbooshian, and thus does not

24

undermine the ALJ's finding that plaintiff's carpal tunnel syndrome did not qualify as severe at step two of the disability analysis.[10]

## 2.   Rejection of a Treating Source Assessment

The ALJ's finding of no disability hinges upon his conclusions regarding the limitations imposed by plaintiff's physical conditions and resulting RFC determination.  In support of her challenge to the Commissioner's determination, plaintiff argues that in arriving at his RFC determination ALJ Gale improperly rejected the opinion of her treating physician, Dr. Garbooshian, and overlooked opinions of other treating sources regarding her limitations.  *See* Plaintiff's Brief (Dkt. No. 9) at pp. 8-11.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588;

---

[10]     Although in the earlier agency decision ALJ Anderson found plaintiff's carpal tunnel syndrome to constitute a severe impairment, he failed to elaborate as to how the condition significantly limited her physical ability to perform basic work activities.  *See* AT 457.

*Barnett*, 13 F. Supp. 2d at 316.[11]  Such opinions are not controlling, however, if they are contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3

---

[11]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

It is unclear from plaintiff's brief precisely which treating source opinions, she contends, were improperly discounted by the ALJ.  ALJ Gale's finding that plaintiff retains the ability to lift and carry ten pounds is entirely consistent with the reported findings in May of 2005 of Dr. Garbooshian, one of her treating physicians, who states that plaintiff is restricted to lifting twenty pounds or less.  AT 404-05.  This finding is not directly contradicted by an assessment of Dr. Bhatt, who merely states that plaintiff is "very limited" in her ability to lift and carry, without providing

more specific guidance concerning that discerned restriction.[12]  AT 406-07.  Plaintiff's RFC finding is fully congruent with Dr. Garbooshian's October 2003 report, in which she opined that plaintiff is unable to do any excessive walking, prolonged standing, bending, lifting, or carrying, all attributes which are consistent with performing at least a partial range of sedentary work.  *See* AT 211.

It is true that in one report Dr. Garbooshian's notes his opinion that plaintiff cannot work.  AT 239.  That view, however, addresses an ultimate issue reserved for the Commissioner, and does not merit controlling weight despite representing the opinion of a treating source.  20 C.F.R. §§ 404.1527(e), 416.927(e); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Pease v. Astrue*, No. 5:06-CV-0264, 2008 WL 4371779, at *7 (N.D.N.Y. Sept. 17, 2008) (Mordue, C.J.).

The only treating source statement potentially in conflict with the ALJ's RFC finding, and specifically addressed by the ALJ in his decision, is Dr. Garbooshian's recorded opinion that plaintiff is restricted to walking no more than thirty minutes at a time.  *See* AT 20, 405.  That finding,

---

[12]    It should be noted that in November of 2004, Dr. Bhatt opined that plaintiff could perform "light duty".  AT 399.

which is not supported by Dr. Garbooshian's treatment notes and medical records, is not necessarily consistent with a finding that plaintiff is able to stand and/or walk for two hours in an eight hour work day, as determined by the ALJ.  The opinion of Dr. Garbooshian is also inconsistent with other medical evidence in the record.

Records from Rome Memorial Hospital for a period between January 2001 and October 2003 generally reveal that plaintiff's strength was 5/5, grip strength was equal, reflexes were symmetrical, sensation was grossly intact, gait was steady, she was neurologically intact, and straight leg raising was negative, although she experienced limited range of motion due to back pain.  *See* AT 104, 118, 120, 132, 135, 139, 166, 171, 174, 181.  Plaintiff was also told she was not a surgical candidate for her back pain.  AT 182.

In October of 2003, Dr. Joseph Pierz, with the Oneida Orthopaedic Associates, found that Mendoza had full range of motion of her lumbosacral spine and both hips, including flexion, extension, and rotation.  AT 238.  He also reported that straight leg raising was negative, there was no weakness to the hip abductors or adductors, sensation and pulses were normal in the lower extremities, reflexes were symmetrical,

and there was no swelling along the iliac crest area or tenderness over the SI joint.  AT 238-39.  In November 2003, Dr. Amarish Kapasi, with Central New York Physiatry, reported that plaintiff had only mild tenderness and spasm in her back, straight leg raising was positive, muscle strength on the right was 5/5 and 4/5 on the left, and deep tendon reflexes were symmetrical.  AT 231.  That same month, Dr. Pierz opined that plaintiff was only moderately limited in her ability to walk.  AT 240.

In April of 2004, Dr. Ganesh observed that although plaintiff had limited range of motion of her back, she had full range of motion of her hips and knees bilaterally, strength was 5/5 in the proximal and distal muscles, reflexes were equal, straight leg raising was negative, and there was no joint effusion or instability.  AT 262, 267.  Dr. Ganesh also noted that plaintiff's stance was normal and although she had a crutch, it was not necessary and she did not utilize it during the exam.  *Id.*  Dr. Ganesh further opined that plaintiff did not experience any gross limitation in walking.  AT 263, 268.

In November of 2004, based upon plaintiff's lingering complaints of hip pain, Dr. Pierz ordered a magnetic resonance imaging ("MRI") testing, which showed that her hip was normal.  AT 387.  Dr. Pierz opined in that

same month that plaintiff did not have any limitations in her ability to walk. AT 400.  That opinion was echoed by Dr. Bhatt, who also reported in November of 2004 that plaintiff had no limitation in her ability to walk.  AT 398.

In addition to this evidence, excerpts from Dr. Garbooshian's own treatment notes demonstrate that plaintiff's conditions did not warrant such harsh limitations.  On many occasions, Dr. Garbooshian reported that plaintiff was in no acute distress.  *See* AT 206, 208, 212, 218, 220, 311, 442, 445.  Moreover, while plaintiff complained of back pain and tenderness, the sources of which were for the most part corroborated by x-ray and MRI evidence, her claims of left hip pain were dispelled by those same test results.  *See* AT 206, 208, 212, 218-19, 220, 311, 442, 444-45.

In June 2003, MRI testing of plaintiff's lumbosacral spine showed only small disc protrusion at L5-SI and small to moderate disc protrusion at L4-L5.  AT 170.  The same month, an x-ray of the lumbosacral spine showed that although there were some arthritic changes at L5-S1, the pedicles, spinous, and transverse processes as well as the height of the vertebral bodies disc space were within normal limits.  AT 184.

In July 2003, an x-ray of Mendoza's left pelvis and hip, which

31

according to her were sources of significant pain, showed no evidence of
fractures or dislocation.  *See* AT 176, 178, 181.  Another x-ray of the
same month of her left hip revealed no radiographic abnormality.  AT 180.
In September 2003, another x-ray of plaintiff's pelvis showed no evidence
of bony abnormality.  AT 217.  In October 2003, an EMG and
electrodiagnostic study demonstrated no evidence of bilateral L2-S1
radiculopathy.  AT 233.  Finally, in April 2004, a lumbar sacral spine x-ray
revealed disc space narrowing at L5-S1 with no spondylolisthesis or
spondylolysis and that the heights of the lumbar vertebral bodies were
maintained.  AT 264.

Based on this evidence, the ALJ's decision not to accord Dr.
Garbooshian's opinion controlling weight is well supported by substantial
evidence.

### 3.   RFC Determination

In his decision, the ALJ found that with her physical condition
plaintiff can only lift and carry ten pounds; stand and walk for two hours in
an eight-hour workday; sit for six hours in an eight-hour workday; push
and pull without repetitive use of her lower extremities; never crawl or
climb ladders or scaffolds; only occasionally crouch and bend; and that

she should avoid temperature extremes, high humidity, fumes, gases, odors, and dust.  AT 20.  The ALJ further found that with her mental limitations, plaintiff should perform work that requires no more than the ability to understand, remember, and carry out simple instructions; make simple work-related decisions; respond appropriately to supervisors and co-workers; and work in a low stress environment that involves only occasional changes in the work setting and interaction with co-workers. AT 20-21.

At the heart of plaintiff's challenge regarding the ALJ's finding of no disability is her contention that the ALJ failed to specify the frequency by which she could lift ten pounds, additionally arguing that the ALJ failed to specify the medical evidence upon which he relied in making his RFC finding.  Plaintiff's Brief (Dkt. No. 9) at pp. 7-8.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. §§ 404.1545(a), 416.945(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F.

Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a.  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Plaintiff contends that the ALJ's RFC finding is flawed, since while

he concludes that plaintiff can lift and/or carry ten pounds he does not specify whether this is on an occasional or frequent basis.  Plaintiff's Brief (Dkt. No. 9) at p. 7.  While an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§] 404.1545 and [§] 416.945[,]" the regulations do not specifically state that the frequency with which a person can meet the lift or carry requirements of sedentary work must be expressly presented in the RFC determination.  *See* Social Security Ruling ("S.S.R.") 96-8p, 1996 WL 374184, at *1-7, *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996); *see also* S.S.R. 96-9p, 1996 WL 374185, at *6, *Titles II and XVI: Determining Capability to Do Other Work - Implications of a Residual Functional Capacity For Less Than A Full Range of Sedentary Work* (S.S.A. 1996); *Mardukhayev v. Comm'r of Soc. Sec.*, No. 01-CV-1324, 2002 WL 603041, at *5 (E.D.N.Y. Mar. 29, 2002).  In fact, such frequency is inherently embedded within the definition of sedentary work; if plaintiff were incapable of performing such functions, it would have been reflected in the RFC determination and could possibly have further eroded the

sedentary base beyond the extent specified by the ALJ.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *6. Interpreting the ALJ's RFC finding as including plaintiff's ability to lift ten pounds frequently, and finding that conclusion to be supported by substantial evidence, I conclude that the ALJ's RFC finding does not provide a basis for reversal of the Commissioner's determination.

Pursuant to SSR 96-8p, an RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. S.S.R. 96-8p, 1996 WL 374184, at *7.  The failure of an ALJ, in arriving at an RFC finding, to explain the evidence that supports his or her finding regarding a claimant's RFC can warrant reversal of the ultimate finding of no disability received.  *See Viall v. Astrue*, No. 1:05-CV-527, 2008 U.S. Dist. LEXIS 8896, at *22-25 (N.D.N.Y. Feb. 5, 2008) (Kahn, J.) (remanding for failing to explain on what specific evidence the ALJ relied upon in making the RFC determination).

While the ALJ's recitation of the evidence relied upon to support the mental and physical components of his RFC finding is only marginally adequate, particularly in view of the Appeals Council's remand

36

instructions, it does provide guidance as to the basis for those findings, which are supported by substantial evidence.  *See* AT 19-20.  Addressing the mental component, ALJ Gale placed considerable reliance upon the opinions of Dr. Kristen Barry, who evaluated the plaintiff in April of 2004, as well as a review by Dr. Richard Weiss, M.D., a state agency psychiatric consultant.  AT 20.  The ALJ also relied upon the fact that plaintiff's treating physicians uniformly agreed that her mental condition imposed no more than "moderate" limitation in only one or two of the areas typically evaluated when addressing work related functioning.  *Id.*  The ALJ's determination regarding the limitations imposed by virtue of plaintiff's mental conditions are well supported by substantial evidence, and indeed not contradicted by anything contained within the record.

Turning to the physical aspects of the RFC determination, the ALJ relied principally upon reports from Dr. Garbooshian, one of plaintiffs treating physicians, therapy notes from Chestnut Commons PT, and the results of an orthopedic examination conducted on April 15, 2004 by Dr. Ganesh, an orthopedic consultant.  *Id.*  That evidence, buttressed by a more expansive RFC assessment by Dr. Bhatt, who in November of 2004 opined that plaintiff could perform "light duty", *see* AT 399,

represents substantial evidence supporting the ALJ's findings regarding plaintiff's physical limitations.  The ALJ's determination is further supported by a physical RFC assessment from an agency consultant, who concluded that plaintiff is able to lift less than ten pounds frequently and ten pounds occasionally, sit for about six hours in an eight-hour work day, stand and walk for approximately two hours in an eight-hour work day, and push and pull without limitation, further noting that plaintiff should avoid concentrated exposure to fumes, odors, dusts, gasses and areas of pour ventilation.  AT 277-79.  While these findings are not opinions of a treating source, they are entitled to some weight and can provide substantial evidence for an RFC determination.  *See Pease*, 2008 WL 4371779, at *9-11.

In sum, I conclude that the ALJ's RFC determination was both properly explained and is supported by substantial evidence in the record.

### 4.    Vocational Expert Testimony

Intertwined with plaintiff's arguments regarding her RFC determination is her contention that even though the vocational expert testifying at the administrative hearing concluded that jobs exist in the national and regional economy that she is capable of performing, his

testimony was based on hypothetical questions which did not accurately reflect her limitations.[13]  *See* Plaintiff's Brief (Dkt. No. 9) at p. 15.

When the testimony of a vocational expert is utilized, as was the case in connection with ALJ Gale's determination, his or her opinions must be based upon hypothetical questions which accurately incorporate all of a claimant's work-related limitations. *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (quoting *Totz v. Sullivan*, 961 F.2d 727, 730 (8th Cir. 1992)).  If the ALJ fails to pose hypothetical questions that do "not include all of a claimant's impairments, limitations and restrictions, or [are] otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Kuleszo*, 232 F. Supp. 2d at 57 (citing *Morse v. Shalala*, 16 F.3d. 865, 874 (8th Cir. 1994)).

In this instance, after finding that plaintiff cannot meet the exertional demands of her past relevant work, AT 21, the ALJ adduced the testimony of a vocational expert.  *See* AT 534-41.  Undeniably, the first hypothetical

---

[13]     Plaintiff does not appear to challenge the mental component of the ALJ's RFC determination; instead, she asserts that only one such limitation was omitted from the hypothetical posed to the vocational expert during the course of the hearing.  *See* Plaintiff's Brief (Dkt. No. 9) at p. 15.

posed to the vocational expert did not comport with the ALJ's RFC

determination, since it assumed plaintiff's ability to lift and carry twenty

pounds occasionally, whereas the ALJ's own RFC determination limited

plaintiff's lifting ability to ten pounds.[14]  *Compare* AT 20-21 with AT 536-37.

The second hypothetical offered to the expert, however, incorporated the

ALJ's RFC determination, including all of the mental restrictions indicated

in his findings.  AT 537-38.  Based upon that hypothetical, the vocational

expert testified that plaintiff is capable of performing as a food checker

and surveillance system monitor, and that jobs in those occupations exist

in significant number in the national and regional economies.  AT 538.

Plaintiff urges that the ALJ's hypothetical to the vocational expert

should have included reference to impairment in her ability to work at a

consistent pace.  It is true that in two functional assessments rendered by

Mental Health Connections it was noted that plaintiff is "very limited" in her

ability to function in a work setting at a consistent pace.  AT 228, 408.

Agency consultant Dr. Weiss, however, concluded that plaintiff has only

---

[14]      Some confusion regarding this issue was engendered in this case,
occasioned by the fact that in her brief plaintiff cites to expert testimony adduced
during the earlier hearing.  *See* Plaintiff's Brief (Dkt. No. 9) at p. 15 (citing AT 501-02).

moderate difficulty in maintaining concentration, persistence or pace,

performing activities within a schedule, maintaining regular attendance,

and being punctual within customary tolerances.  AT 292, 296.  More

significantly, in 2003, 2004, and 2005, Dr. Garbooshian, plaintiff's own

treating physician, found that she had no limitation in her ability to perform

in a work setting at a consistent pace.  AT 210, 402, 404.  Dr.

Garbooshian further reported in August 2003 that plaintiff did not appear

depressed or anxious.  AT 220.  In a mental evaluation conducted in 2003

at Rome Memorial Hospital, staff there concluded that plaintiff's behavior,

mood, affect, non-verbal expression, and memory were all normal, AT

151-52, although plaintiff was assigned a Global Assessment of

Functioning ("GAF") score[15] of 50, which indicates serious symptoms or

any serious impairment in social, occupational, or school functioning, by

both the Rome Memorial Hospital and Clinical Social Worker, J. Carroll, of

Mental Health Connections. AT 163, 437; DSM-IV-TR at 34.

This notwithstanding, in 2004, state agency consultant, Dr. Barry,

---

[15]     The Global Assessment of Functioning ("GAF") scale considers
psychological, social, and occupational functioning on a hypothetical continuum of
mental health.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (Am.
Psychiatric Assoc., 4th ed. Text Revision 2000) ("DSM-IV-TR").

opined that plaintiff's attention and concentration were grossly intact.  AT 257.  Later, in 2005, staff at Mental Health Connections noted that plaintiff's affect was appropriate, memory, insight, and judgment were okay, and she was fully oriented.  AT 421.  Other medical records from Mental Health Connections reflect that plaintiff's insight, judgment, and mood were at that point good, and she could pay attention.[16]  *See* AT 250, 253, 390, 418-19, 421, 423, 425-27, 432-33.

In short, while there is some conflicting evidence regarding plaintiff's ability to perform work related activities at a consistent pace, it is not the function of the court to reconcile that conflicting evidence.  *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citation omitted).  Because the ALJ's rejection of this limitation when making his RFC determination is supported by substantial evidence, the failure to include that limitation in a hypothetical question rendered to the vocational expert does not undermine the validity of his opinions.

5.    Plaintiff's Credibility

---

[16]    It should also be noted that plaintiff cancelled, or simply did not appear for, many of her appointments at Mental Health Connections.  *See* AT 252, 390-91, 424-25, 431, 438.

In arriving at his determination, ALJ Gale noted that plaintiff's claims regarding her disabling symptomology were not fully credible.  AT 21. Plaintiff contends that the basis for the ALJ's rejection of her disabling claims was not properly recounted in his opinion.  Plaintiff's Brief (Dkt. No. 9) at p. 14.

It is well within the discretion of the Commissioner to evaluate the credibility of a plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*  (S.S.A. 1996).  "Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," all information submitted by a claimant concerning his or her symptoms must be considered.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The claimant's testimony alone carries independent weight; to require a claimant to fully substantiate his or her symptoms with "medical evidence would be both in abrogation of the regulations and

against their stated purpose." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 207 (W.D.N.Y. 2005) (citing *Castillo v. Apfel*, No. 98 CIV. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999)).

The regulations proscribe a specific process that the ALJ is to follow in weighing a claimant's testimony. The ALJ must first establish that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). If the ALJ finds such an impairment, the ALJ next evaluates the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's functioning. 20 C.F.R. §§ 404.1529(c), 416.929(c).

A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective clinical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms. *Barnett v. Apfel*, 13 F. Supp. at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). If the claimant's testimony concerning the intensity, persistence, or functional limitations is not fully supported by clinical evidence, the ALJ must consider additional

factors, including 1) daily activities; 2) location, duration, frequency, and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken to relieve symptoms; 5) other treatment received; and 6) any other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject a claimant's subjective testimony.  *Martone,* 70 F. Supp. 2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  Although the ALJ is free to accept or reject such testimony, a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at 260-61 (citation omitted).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  42 U.S.C. §405(g); *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).

45

In this case, ALJ Gale rejected plaintiff's complaints of pain and an inability to work due to mental limitations as being only partially credible, setting forth his belief that they were not substantiated by clinical evidence in the record, and noting that treating and examining physicians did not discern long-term and significant limitations on her ability to perform work activities.  AT 21.  While the ALJ's recitation of the factors leading him to reject, in part, plaintiff's subjective claims is less than comprehensive, it does set forth in summary fashion the basis for his determination, and that basis draws the support of substantial evidence.  As the ALJ noted, plaintiff's complaints are inconsistent with the results of both diagnostic and clinical evidence.  *See* AT 19, 21, 23.  Consultative examinations of Dr. Ganesh and Dr. Barry, for example, revealed only moderate findings.  AT 255-59, 260-64, 265-69.  Similarly, an x-ray of plaintiff's cervical spine showed only "mild" degenerative changes, and an x-ray of her left elbow was normal.  AT 138, 144.  MRI testing in June of 2003 revealed some positive findings in plaintiff's lumbar spine area, and in October 2003 EMG testing confirmed no definitive electrodiagnostic evidence of radiculopathy.  AT 170, 233, 381.

Turning to the mental component of plaintiff's subjective complaints it is noted that the reports of her treating physicians, Dr. Garbooshian, consistently described her depression as "stable". *See, e.g.,* AT 178, 206, 221. Similarly, notes from the Mental Health Connection have repeatedly revealed benign objective findings with good mood and "little or no anxiety." AT 423-27. It is also noted that despite her claims plaintiff did not seek out a psychological evaluation until May of 2003, at which time she reported no past psychiatric symptoms, diagnoses, or treatment. AT 146, 150-51. Since that time, plaintiff's treatment for her mental condition has been extremely conservative, a factor which may be considered when assessing credibility. *See, e.g., Harvey v. Astrue*, No. 5:05-CV-1094, 2008 WL 4517809, at *13 (N.D.N.Y. Sept. 24, 2008) (Mordue, C.J.). Additionally, plaintiff has not sought and received continuous treatment over time for her mental condition, another relevant factor. *See, e.g., Iuteri v. Barnhart*, No. 3:03CV393, 2004 WL 1660580, at *12 (D. Conn. March 26, 2004).

Plaintiff's credibility is also undermined by consideration of her statements and testimony regarding daily activities. *See, e.g.,* AT 73, 99-

47

100, 236, 258, 261, 522-23, 525.  Plaintiff has reported that she is able to crochet, knit, needle point, prepare meals, shop, drive, wash dishes, cook, take care of her personal needs, read, and watch television.  *Id.* Moreover, despite being referred for vocational training, therapy notes reflect that plaintiff was "not open to exploring other vocational pursuits that would be within her abilities."  AT 422.

After considering these facts I conclude that the ALJ's determination regarding plaintiff's credibility is supported by substantial evidence.

IV.    SUMMARY AND RECOMMENDATION

_____In arriving at his determination of no disability, the ALJ correctly determined that plaintiff's carpal tunnel syndrome was not a severe impairment, properly assessed plaintiff's RFC, and, in reliance upon testimony of a vocational expert based upon hypothetical questions closely approximating plaintiff's condition and limitations, properly concluded that there exist in the national regional economy sufficient jobs in sufficient numbers which plaintiff is capable of performing.  Accordingly, it is hereby

RECOMMENDED that defendant's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no disability AFFIRMED, and plaintiff's complaint DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1) (2006); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    October 23, 2008
          Syracuse, NY